816 FIFTH AVENUE, INC., Landlord, *v.* ALMA C. LEONARD, Tenant.

Municipal Court of the City of New York, Borough of Manhattan, January 7, 1947.

*B. L. Visscher* for landlord.

*Joseph Liff* for tenant.

SCHWEITZER, J. This is a proceeding brought by the landlord, a New York corporation, for recovery of possession of a penthouse apartment now occupied by the tenant at premises 816 Fifth Avenue, New York City. The petition alleges that the tenant's lease expired on September 30, 1946, and the landlord's ground for removal is predicated on a certificate relating to eviction duly issued by the Rent Director of the Office of Price Administration pursuant to subdivision (b) of section 6 of the Rent Regulation for Housing in the New York City Defense-Rental Area (8 Federal Register 13918, as amd.). The certificate was issued on May 17, 1946, to the landlord in this proceeding, permitting said corporation to commence eviction proceedings against the tenant for the purpose of permitting " occupancy of the tenant's apartment, penthouse, by Dr. and Mrs. Roos, sole stockholders of the owner corporation as their dwelling." The certificate further provided that these proceedings were not to be commenced sooner than six months from February 28, 1946. That condition of the certificate has been complied with.

The tenant appeared and demanded a jury, which was, however, waived by both parties at the inception of the trial.

The tenant resists the landlord's application on three grounds; first, that the certificate was prematurely issued since it was secured while the tenant was in possession under a concededly valid lease; second, that the petitioner, being a corporation, may not bring these proceedings under the rent regulation to recover housing accomodations, and third, that the premises are not sought by the landlord in good faith.

It is now the well-established law of the First Department that where the Rent Director of the Office of Price Administration issues a certificate relating to eviction permitting a landlord to bring eviction proceedings, and where it appears that the landlord has complied with the conditions contained in such certificate, the provisions of subdivision (a) of section 6 (8 Federal Register 13917, as amd.) of the Rent Regulation become inapplicable and the landlord is authorized to proceed pursuant to the provisions of section 1410 of the Civil Practice Act, with

the same force and effect as if the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 901 *et seq.*), and the Rent Regulation promulgated thereunder were not in effect. (*Richelieu Realty Co.* v. *Mangin,* 187 Misc. 440; *Metropolitan Life Ins. Co.* v. *Schottland,* 185 Misc. 125, mod. 270 App. Div. 915; *Thorpe* v. *Jenkins,* 187 Misc. 293; *Geer* v. *Noonan,* 187 Misc. 295.)

The pronouncements of our Appellate Term unequivocally preclude any consideration by this court of any of the issues which might have been raised by the tenant under the rent regulation in the proceedings before the rent ·director. The court is sympathetic with the tenant's position and recognizes the moral strength of his claim that the certificate was issued prematurely. However, the official interpretive bulletins issued by the Administrator of the Office of Price Administration permit such issuance prior to the expiration of a lease and, although such bulletins are not binding on the courts, they are entitled to great respect and are generally followed where they do not conflict with a strict principle of local law. (*Kimmelman* v. *Tenenbaum,* 182 Misc. 558; *Lubin* v. *Streg,* 56 F. Supp. 146.) During the current emergency our courts have accorded them great weight. (*Sherry-Netherland Corp.* v. *Mandel,* 181 Misc. 372.)

The court appreciates the administrative difficulties necessarily implied in a situation where the rent director is called upon to determine whether or not a valid lease is in existence at the time that the landlord applies for a certificate. This difficulty might well be overcome by the incorporation in the certificate of an additional condition: that is, the representation by the landlord that at the time of the application the tenant was not in possession under a lease. This would obviate the necessity of requiring the rent director to act in a judicial capacity and would in effect permit the local court to determine judicially, as a question of fact, whether such a condition actually existed at the time the landlord applied for the certificate.

This court feels that the issuance of such a certificate, during the period of a valid lease, is violative of the spirit and purpose of the act. The rent regulation, by providing for a suspension of possessory remedies, unless the landlord complies with certain conditions and exceptions enumerated therein, indicates clearly that its purpose is to preserve existing tenures. These conditions and exceptions are enumerated generally in subdivision (a) of section 6 of the Rent Regulation. Subdivision (b) of section 6 was enacted to provide for the issuance of an evic-

tion certificate permitting a landlord to invoke the possessory remedies under local law, where it appears to the rent director that the eviction is not inconsistent with the purposes of the Emergency Price Control Act or the rent regulation. However, subdivision (b) of section 6 provides that " The certificate shall authorize the pursuit of local remedies at the expiration of six months after the date of filing of the petition unless the Area Rent Director has determined that a three months' period is adequate for the purposes of the act in this area in issuing certificates under section 6 (b) (2), in which event the applicable period shall be three months." (10 Federal Register 11668.) We take judicial notice of the New York City area's designation as a " six months area ".

There can be no doubt that the " waiting period " was enacted for the sole benefit of the tenant sought to be dispossessed. How, therefore, can it be logically argued that the tenant receives the benefit of the " waiting period " when such " waiting period " coincides with, or is less than a similar period of the tenant's lease? It represents nothing but the exercise, by the rent director, of an ineffectual gesture, since the landlord may not resort to its possessory remedies under the Civil Practice Act while the tenant remains in possession of premises under a valid lease. The gift of time is illusory. It will also be noted that the degree of proof required by the Regulation in a paragraph (6) of subdivision (a) of section 6 (10 Federal Register 11668) proceeding is considerably greater than that required by the rent director in issuing a certificate in a subdivision (b) of section 6 proceeding. In the former a landlord must not only proceed on a notice of not less than ten days (due compliance with paragraph [1] of subdivision [d] of section 6 of the Rent Regulation; 8 Federal Register 13918), but must also satisfy the court that he has " an immediate, compelling necessity " for such premises. In contrast with this relatively high degree of proof the rent director, as a prerequisite to the issuance of a certificate, merely must satisfy himself that the landlord is not acting in contravention of the purposes of the act and regulation and seeks the premises in good faith. However, this disparity of proof in a subdivision (b) of section 6 proceeding is offset by an equalizing penalty; that is, the imposition of a " waiting period " of up to six months, during which the landlord may not proceed under section 1410 of the Civil Practice Act. This, when added to the maximum period of discretion permitted to the court under section 1436-a of the Civil Practice Act allows the tenant a possible full year before the warrant of dispossess may be

ultimately executed. This hypothesis is utterly destroyed by permitting the rent director to issue a certificate during a period of a valid lease.

The court's feeling is considerably buttressed by a letter sent to the Justices of the Municipal Court by the then Chief Area Rent Attorney for the New York City Defense-Rental Area, Maurice R. Whitebook, Esq., dated September 12, 1945. The letter referred to an amendment to subdivision (b) of section 6 permitting a rent director to increase the normal " waiting period " to six months before a landlord might resort to summary proceedings. The letter commented upon the considerations which prompted this amendment, saying in effect that sales of rented property had so greatly accelerated that an over-all shortage of housing accommodations had been created. In this connection it states : " The existing three months waiting period is, in some areas, totally inadequate to enable the dispossessed tenants to find suitable substitute accommodations. This condition has led to abuses and evasions of the provisions and purposes of the Regulation. The Administrator further states that during the reconversion period the importance of security of tenure and of *an adequate period in which to obtain other rental premises* within the means of the dispossessed tenants, are even more important than during the war. Therefore, the Rent Director is now authorized to extend the waiting period, before a purchaser may bring proceedings to evict a tenant for self-occupancy, from three months to six months ". (Emphasis supplied.)

In view of this declaration of underlying principles, the court is at a loss to understand how the issuance of a certificate six months prior to the termination of a tenant's lease is consistent with those principles. Can it be seriously argued that the tenant is obligated to seek other quarters while he is in possession of housing accommodations under a valid lease? Nevertheless, that is the direction necessarily inherent in the rent director's interpretive bulletins permitting the issuance of a certificate during the tenant's rental period.

This court's feelings, however, must necessarily be subordinated to decisions of the Appellate Term of this department, which are too plain and unambiguous to distinguish or disregard. Controlling precedents of this character may not be lightly cast aside, even though they conflict with the court's own views. (*Brown* v. *John Hancock Mutual Life Ins. Co.*, 145 Misc. 642; *Schindler* v. *Royal Insurance Co.*, 258 N. Y. 310.) There is hope that this discussion, when brought to the attention of the rent director, will bring about corrective measures intended to cure a policy which is basically illogical and violative

of the principles which prompted the enactment of the Emergency Price Control Act and the rent regulation.

The tenant's second objection to the landlord's petition refers to the illegal issuance of the certificate by the rent director, insofar as it permits a corporation to repossess housing accommodations, even though the certificate states that it is issued for the benefit of its sole stockholders. This court, on a prior occasion, denied similar relief to a landlord corporation on the ground that a corporation, being an artificial person cannot " dwell " or use housing accommodations. (*Reconstruction Syndicate* v. *Sharpe,* 186 Misc. 897.) A similar view was expressed in the case of *John J. Revoir Corp.* v. *Monsour* (61 N. Y. S. 2d 777). In each of the cases the rent director issued a certificate permitting the commencement of eviction proceedings for the benefit of a stockholder. Subsequent interpretive bulletins issued by the rent director permitted the issuance of a certificate to a principal stockholder and although such directive is not violative of any principle of local law, it appears to this court to be ill-advised. It is noteworthy to observe that the Emergency Rent Laws of 1920, to which the present regulation presents a striking similarity and upon which it was undoubtedly patterned, permitted recovery of possession of housing accommodations only if " the owner of record of the building, being a natural person, seeks in good faith to recover possession of the same or a room or rooms therein for the immediate and personal occupancy of himself and his family as a dwelling  *  *  *." (L. 1920, ch. 947, § 1.)

The counterpart of this provision is found in clause (b) of subdivision 1 of section 261 of the Multiple Dwelling Law restricting the recovery of possession of certain noncomplying premises during the emergency period. (L. 1945, ch. 880, § 1.) The omission of the phrase " being a natural person " from the Federal regulation is not to my mind a sufficient distinction to justify summary proceedings by a corporate landlord. However, this is the court's own personal viewpoint and must necessarily be subordinated to controlling precedent. (*Richelieu Realty Co.* v. *Mangin,* 187 Misc. 440, *supra.*). An examination of the record in this latter case reveals that while the particular issue was not raised by the tenant, the certificate there was issued to a sole stockholder of the landlord corporation.

In the District of Columbia the court recognizing the uniqueness of permitting a corporation to bring summary proceedings to recover housing accommodations, relaxed sufficiently to permit a nonprofit religious corporation to recover a dwelling for the use of its students. The court expressly limited its

decision to the peculiar circumstances of the case, noting that the corporation stood *in loco parentis* to its students and is in a very broad sense the head of a spiritual family. (*Hoffman* v. *Apostolic Works, Inc.*, 43 A. 2d 848 [D. C.].)

This court reluctantly adheres to the principles of the *Richelieu* case (*supra*) and is constrained to recognize that the certificate, having been sanctified with a halo of quasi-judicial finality, bars the court from entering into any consideration of the circumstances surrounding its issuance and upon proof of compliance by the landlord with the conditions stated therein the court must necessarily confine its considerations only to those issues which may be raised under section 1410 of the Civil Practice Act. (*Geer* v. *Noonan*, 187 Misc. 295, *supra; Richelieu Realty Co.* v. *Mangin, supra,* and cases cited thereunder.)

The tenant relies upon the third defense that the landlord does not seek to recover the premises in good faith for its own use. Sufficient has already been said in this opinion to dispose of that defense. It has been judicially determined that such defense is insufficient as a matter of law. (*Thorpe* v. *Jenkins,* 187 Misc. 293, *supra; Richelieu Realty Co.* v. *Mangin, supra,* and the cases cited thereunder.)

Moreover, the issue becomes academic in any event since the record is replete with evidence sufficient to satisfy the court that the landlord honestly intends to permit occupancy of the premises as a dwelling for its sole stockholders. In reaching this conclusion, the court takes particular note of the fact that the record is barren of any evidence to indicate that the petitioner is guided by any ulterior motive designed to evade or defeat the purpose of the rent regulation. From all the evidence the court concludes that the petitioner's primary, activating motive is to secure housing accommodations and not to dispossess the tenant; that is, in the court's opinion, the sole test of whether or not the landlord intends in good faith to use the certificate for the purposes for which it was issued.

The issue, however, is of sufficient importance to justify an examination of the conflicting law applicable thereto in the hope that this issue, together with the other issues raised by this tenant, will ultimately receive reconsideration in our appellate court. Because of experience gained in the great number of cases tried before it, the court recognizes the dangers inherent in a rule which precludes consideration by it of any evidence of good faith. It is not sheer imagination that prompts this court to envision unscrupulous landlords using the certificate as a sword of Damocles over the tenant's head for the purpose of gouging " under the table " cash payments or exacting unconscionable sales of realty. If a landlord presents a certificate,

such evidence must be excluded from the court's consideration under the present decisions, except insofar as it may be relevant to the issue of conformance with the conditions in the certificate.

The same question has been presented to the Appellate Term, Second Department, on many occasions. An examination of these cases reveals conflicting decisions, which this court cannot reconcile. The first concrete presentation of such a question was in the case of *Traiger* v. *Sacks* (184 Misc. 955, affd. 185 Misc. 540). In this latter case my learned colleague, Judge PETTE, noted the informality with which a certificate is issued, stating: " * * * the hearing is had before an attorney employed in said office, the rules of evidence are disregarded *in toto;* the witnesses are not sworn; hearsay proof of any nature may be submitted; no record is transcribed and the general rule of cross-examination, rebuttal, etc., is entirely absent." (Other cases in that department have held to a similar view: *Rosen* v. *Karp,* 187 Misc. 453; *Davis* v. *Abrams,* N. Y. L. J., Oct. 26, 1946, p. 1057, col. 3.)

However, several other opinions have been rendered by the Appellate Term, in the second department ,holding to the view presently in effect in the first department. (*Logan* v. *Posternick,* 186 Misc. 896; *New York City Housing Authority* v. *Curington,* 181 Misc. 955; *New York City Housing Authority* v. *Rokaw,* 54 N. Y. S. 2d 570; *New York City Housing Authority* v. *Awant,* 183 Misc. 823.)

In examining the First Department decisions on this subject the Appellate Term repeatedly has relied for its legal support on the leading case of *Metropolitan Life Ins. Co.* v. *Schottland* (185 Misc. 125, *supra*). This case first enunciated the principle of a certificate's finality, stating at page 128: " Redress from a certificate issued pursuant to subdivision (b) of section 6 must be had in an appeal to the Emergency Court provided by subdivision (d) of section 204 of the Emergency Price Control Act of 1942 (U. S. Code, tit. 50, Appendix, § 924, subd. [d]). The certificate merely indicates that in the opinion of the Administrator summary proceedings are not in contravention of the spirit of rent control. Thereafter, the proceedings may be prosecuted solely according to local law."

The Appellate Division affirmed that portion of the court's decision (270 App. Div. 915), but an examination of the record on appeal shows that the higher court did not have before it for consideration the ruling in the case of *Parker* v. *Porter* (154 F. 2d 830, certiorari granted 328 U. S. 828). This case held that a tenant of housing accommodations has no standing in the Emergency Court of Appeals to protest against issuance of a

certificate by the Price Administrator permitting a landlord to pursue his legal remedies for the tenant's eviction. It seems to this court that this ruling, in effect, destroys the rationale of the *Metropolitan Life Ins. Co.* v. *Schottland* case (*supra*), and renders that decision archaic. The decision in the *Parker* case (*supra*) shuts tightly the last door of redress which a tenant might have for a legal review of the acts of the rent director in issuing the eviction certificate. This, of course, is true in the absence of a reversal of that decision by the Supreme Court of the United States. It would appear, therefore, that the doctrine of the case of *Metropolitan Life Ins. Co.* v. *Schottland* (*supra*) should no longer be urged as a controlling precedent. Until it is disclaimed, this court must comply with it.

Evidence in conformance with section 1436-a of the Civil Practice Act having been presented to this court and the court taking judicial notice of the critical housing situation, particularly in the immediate vicinity of the premises involved in this proceeding, the court grants the tenant a stay of execution of the warrant of dispossess until March 18, 1947.

Final order for the landlord awarding to it the possession of the premises involved in this proceeding. The issuance of the warrant, however, is stayed until March 18, 1947.